LITT HOLLIS *v.* THE STATE.

1. CONTINUANCE — PRACTICE IN THIS COURT. — This court will not look into the action of the court below in refusing a continuance, unless such action be excepted to below and brought up by bill of exceptions.　A recital in the judgment that exception was taken will not suffice, but the *bill* must be taken.　It is only on the question of diligence that an issue of fact can be raised by the opposite party.

(*On Rehearing.*)

2. NEW TRIAL. — If the application for a continuance be good and sufficient on its face, and it appears after conviction that the desired evidence was

of a material character and probably true, the proper practice would be to grant the accused a new trial. But the materiality and probable truth of the desired evidence need not, it seems, be affirmatively indicated by the proof at the trial.

Appeal from the District Court of Tarrant. Tried below before the Hon. A. J. Hood.

The appellant was charged by bill of indictment with the theft of two steers, the property of Bill Douglass, and one steer, the property of Isaac Hudson, in Tarrant County, on the fifteenth day of June, 1880.

The application for a continuance, held by the court to have shown due diligence in an effort to obtain the attendance of the witnesses named, further alleged, as material to the defence, the fact that the accused had purchased the steers in Collin County, in good faith, of William Brun, paying him therefor a valuable consideration, upon the representation of the said Brun that the said steers were his property; to which facts the absent witnesses would testify, they being present when the purchase was made. The application for a continuance was refused, the accused placed upon trial, found guilty, and the punishment assessed against him was three years' confinement in the State penitentiary.

Isaac Hudson testified that one of the steers described in the indictment was his property, and the other two belonged to William Douglass. Witness's steer was running near his ranch in Grayson County about the 1st of June. Witness did not see him again until he found him, about the middle of the same month, in Kemper's butcher-pen in Fort Worth. Witness gave no one his consent to take the steer away.

Bill Douglass testified, for the State, to the same effect, proving the ownership of the property as alleged in the indictment, and want of consent to the taking of them away.

D. C. Kemper testified, for the State, that about the fif-

teenth day of June, 1880, the accused brought the steers described in the indictment to his butcher-pen in Fort Worth, and offered to sell them to witness and his brother, and appeared anxious to effect the sale. Witness did not purchase then, but left the pen and went down to his meat-stand in town. After dark, the accused went to witness and told him that he had sold the steers to the brother of witness, and had been sent by his brother to him for the pay. Witness refused to pay without a written order from his brother, which accused did not have. Accused said he was in a hurry, and wanted the money. Witness told him to wait until morning. He was arrested that night, and did not get the money.

J. M. Henderson, sheriff of Tarrant County, testified, for the State, that he went to the accused and one James Kendrick at about one o'clock, and commenced a conversation with them about the steers they had sold Kemper. Accused told witness, in Kendrick's presence, that the cattle belonged to his father, who had a herd in Collin County; that he had got hard up for money, and had driven ten head to Dallas for sale, but, not liking the prices, had started back and lost all but these three, which he wished to sell rather than have further trouble with them. During the conversation, one of the parties said that the herd was in the eastern part of Dallas County, and at another time one of them said it was in the north-western part of Collin County. Witness asked them to name some person, or school-house, or church, or neighborhood in the vicinity, but they said they could not do it.

*B. G. Johnson*, for the appellant.

*Thomas Ball*, Assistant Attorney-General, for the State.

HURT, J. The appellant was tried and convicted of the theft of three steers. He filed his application for a continuance of the case to the next term of the court. We are

of the opinion that the application complied with the law in every particular; but, failing to save by bills of exception the action of the court in overruling his application, we are without the power to grant relief.

We desire to state, and to impress the fact upon the attention of the profession, that this court will not revise the action of the court below in overruling an application for continuance unless the same is presented by bill of exceptions. This must be done. Again: though the judg-ment of the court overruling the application recites that the defendant excepted to the ruling of the court, this will not suffice. The bill must be taken. *Hyde* v. *The State*, 16 Texas, 453; *Fowler* v. *Buckner*, 23 Texas, 86; *Harrison* v. *Cotton*, 25 Texas, 53; *Johnson* v. *Brown*, 25 Texas Supp. 126; *Baker* v. *Kellogg*, 16 Texas, 118; *Campion* v. *Angier*, 16 Texas, 93; *Parker* v. *McKilvain*, 17 Texas, 159; *Bowman* v. *The State*, 40 Texas, 8; *James* v. *The State*, 40 Texas, 188; *Townsend* v. *The State*, 41 Texas, 134; *Anderson* v. *The State*, 42 Texas, 390; *The State* v. *Williamson*, 43 Texas, 500; *Nelson* v. *The State*, 1 Texas Ct. App. 42.

In answer to the application, the county attorney filed a counter-affidavit, not as to the diligence, but as to the truth of the facts proposed to be proved by the absent witnesses. We desire to say that this procedure is without authority of law, and is in violation of the well-settled principles of the same. This can be done *only* for the purpose of attacking the diligence used by defendant in obtaining the attendance of his witnesses. Code Cr. Proc., art. 564.

If the defendant had excepted to the ruling of the court upon his application, and preserved it by bill of exception, we would have reversed the judgment, ignoring entirely this counter-affidavit. But, failing in this, no attack upon it, however illegal, could have injured the rights of defend-ant. We have given this record our most careful attention, and find no errors (but the one above mentioned, which is

beyond our power of relief) for which the judgment can be reversed. It must therefore be affirmed, which is accordingly done.

HURT, J., on rehearing. · The defendant was convicted of the theft of cattle, and from the judgment of conviction he appeals to this court.

This case was before us at a former day of this term, and the judgment of the lower court was affirmed. But in the opinion then rendered we stated that the application for continuance was in strict compliance with the law in every particular, and that if the appellant had reserved a bill of exceptions to the action of the court below in overruling the same, this court would have reversed the judgment of the court below. Since the affirmance of the judgment, and within proper time, appellant moved for a rehearing and *certiorari*, which were granted, and we now have before us another transcript, in which it appears that appellant did save his bill of exceptions to the order of the court overruling his motion to continue the case.

If the application for continuance be good and sufficient upon its face, there remains another important question to be considered, and that is, "Did it appear, upon the trial, that the evidence of the witnesses named in the application was of a material character, and that the facts set forth in said application were probably true?"

The materiality of facts, in a great many cases, depends upon the evidence of the State, or the case made by the State. In this case the facts upon which the conviction was sought are the *corpus delicti*, want of consent, and recent possession of appellant.

The cattle were seen last in Grayson County, on the first day of June, 1880. The appellant proposed to prove by the absent witnesses that he purchased them on the 12th of June, in good faith, from one William Brun, in Collin County. If indeed he purchased the cattle on the 12th in

Collin County, then the facts are very material to his defence. A serious inquiry here presents itself, which is this : Must the evidence on the trial point affirmatively to the materiality of the facts and their probable truth? We think not; if so, then (the facts being material and exculpatory) no legal conviction could be had; for, if the evidence of the State indicates the truth of exculpatory facts, it would not be inculpatory, but exculpatory, and therefore a failure of proof on the part of the State. We are of opinion, then, that if there is no conflict between the evidence of the State and the facts in the application, then, in that case, they would "appear to be material and probably true."

Of course their materiality must appear either upon the face of the application, or be made thus to appear by the case as made by the State. But if there is such a conflict between the evidence of the State and that set forth in the application as to clearly render it improbable that the facts in the application are material and true, then, though proper diligence has been used and the materiality appears upon the face of the application, the court below should refuse a new trial. There must not only be a conflict, but the evidence of the State must be so strong and convincing as to render the truth of the facts improbable.

It may be contended that the statement made to the witness Henderson by appellant creates such a conflict. We think there is no such conflict in that statement. The appellant told the witness that the cattle belonged to his father, who had a herd in Collin County; that he had got hard up for money, and had driven them to Dallas, but, not liking the price, he had started back and lost all but these, and that he wished to sell them, etc. All this may be true, and still the defendant may have purchased, in good faith, these cattle in Collin, as set forth in the application. Again, this may not be true, but there is not that strong and convincing proof to the contrary as to render its truth improbable.

We are therefore of the opinion that the court erred in overruling the appellant's motion for a new trial, for which the judgment of the court below is reversed.

*Reversed and remanded.*